**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Alison Mullaney,

Plaintiff

v.

The Travelers Indemnity Company, et al.,

Defendants

Case No.: 2:23-cv-01530-JAD-BNW

**Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment and Referring Case for Mandatory Settlement Conference**

[ECF No. 44]

Alison Mullaney got into a car accident with a driver whose insurance policy was insufficient to cover her claimed damages. The Travelers Indemnity Company offered to cover much of her remaining medical expenses under Mullaney's own underinsured-motorist policy, but it decided against covering a lifetime of annual rhizotomies—the trimming of nerves to manage pain—based on consultations with its nurse. After learning that Travelers' claim-settlement offer would not include these future procedures, Mullaney sent Travelers a series of detailed questions asking how it decided coverage. Because Travelers' answers didn't satisfy Mullaney and it still refused to cover the procedures, Mullaney brings this suit for breach of contract, bad faith, violations of Nevada's unfair-claims-practices statute, declaratory relief, and punitive damages alleging a "calculated strategy" to stonewall her on coverage.[1]

Travelers now moves for summary judgment. It argues that doctors decide the need for more rhizotomies on a procedure-by-procedure basis, so Mullaney's allegation that she needs them for life is speculative, and no medical literature supports giving rhizotomies for that

[1] ECF No. 48 at 13.

duration. Travelers also defends its investigation against Mullaney's allegations of bad faith, contending that it adequately reviewed Mullaney's medical records and that it responded to her with the level of detail required by Nevada law. Mullaney offers sufficient expert testimony and other evidence showing genuine disputes of material fact precluding summary judgment on any of her claims. Because the record fails to support punitive damages however, I strike that prayer.

**Background**

Mullaney amassed approximately $81,000 in medical bills immediately after an automobile collision in 2022.[2] Since the accident, she has continued to receive medical treatment including rhizotomies, which use radio waves to trim pain-causing nerves.[3] Her pain specialist has recommended annual rhizotomies for the rest of her life,[4] which Travelers estimates would cost around half a million dollars.[5]

Mullaney recovered $50,000 from the tortfeasor driver and his insurer which tendered its policy limit.[6] She also maintained her own insurance policy with Standard Fire Insurance Company, a subsidiary of Travelers, at the time of the accident.[7] That policy had a provision that promised to pay underinsured-motorist (UIM) benefits up to $500,000 to Mullaney if she can show she was legally entitled to recover compensatory damages from an underinsured motorist.[8]

---

[2] ECF No. 49 at 21 (15:9–22); *id.* at 129, 204. She has continued to receive treatment and claims her medical bills now exceed $180,000. ECF No. 48 at 18.

[3] ECF No. 54 at 13–14.

[4] *Id.* at 14.

[5] ECF No. 44 at 5.

[6] ECF No. 49 at 128–29.

[7] ECF No. 50 at 216.

[8] *Id.* at 216, 234.

Because Mullaney's claimed medical damages exceeded the policy limits of the underinsured driver's policy, she submitted a UIM claim to Travelers,[9] which reviewed the claim and offered to settle for $109,545.[10] Mullaney submitted several supplemental claims with medical records that she claims support her need for future treatments such as rhizotomies.[11] Mullaney also sent a letter with many detailed questions demanding that Travelers explain its process for its coverage decision.[12] Travelers reviewed the supplemental claims over the next few months and made additional settlement offers that eventually reached $165,000.[13] Although Travelers communicated with Mullaney during this time, it did not answer Mullaney's questions about Travelers' decision-making process to her satisfaction.[14] When Mullaney insisted on answers, Travelers responded to Mullaney's questions—several months after they had been sent—and explained that its "internal medical professional" had determined that future medical treatment was not necessary.[15] Travelers refused to reveal the identity of that medical professional claiming work-product privilege.[16]

So Mullaney filed this suit for breach of contract, bad faith, violations of Nevada's unfair-claims-practices statute, declaratory relief, and punitive damages in state court, and Travelers removed to this court.[17] After Mullaney sued, Travelers eventually revealed that it

---

[9] ECF No. 51 at 6.

[10] ECF No. 53 at 13. Travelers also paid Mullaney $5,000 in medical-payment benefits. ECF No. 44 at 8; ECF No. 46-2 at 9.

[11] ECF No. 46-2 at 11–18.

[12] ECF No. 53 at 16–17.

[13] *Id.* at 95.

[14] *Id.* at 104–06.

[15] *See id.* at 101–03.

[16] *Id.* at 103.

[17] *See generally* ECF No. 1-1; ECF No. 1.

relied on its employee nurse, Mary Liparulo, for its medical determination.[18] Liparulo opined that annual rhizotomies were not necessary after reviewing medical literature and opining that "there was no way to determine that [Mullaney] would require [rhizotomies] yearly for her lifetime."[19] She also thought that a three-month gap in medical treatment raised a potential causation issue.[20]

## Discussion

### A. Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[22] A fact is material if it could affect the outcome of the case.[23] On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[24] When the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[25]

---

[18] ECF No. 46-2 at 10–11; ECF No. 56 at 209–12.

[19] ECF No. 46-2 at 10–11.

[20] *Id.*

[21] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[23] *Id.* at 249.

[24] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[25] *Celotex*, 477 U.S. at 323.

**B.    Whether Travelers must cover Mullaney's rhizotomies is a question of fact that precludes summary judgment on Mullaney's breach-of-contract claim.**

Travelers moves for summary judgment on Mullaney's breach-of-contract claim.[26]  A breach-of-contract claim in Nevada requires a valid contract, its breach, and damages resulting from the breach.[27]  Both parties agree that Travelers and Mullaney had a contract: a UIM policy that promised to "pay compensatory damages" that could have been recovered from the under-insured motorist for "bodily injury sustained by an 'insured' and caused by an accident."[28]  They disagree over whether the policy covers a lifetime of rhizotomies.

Travelers contends that Mullaney's rhizotomies are not covered because such procedures are provided on an as-needed basis, and just how long Mullaney will need them is speculative.[29]  Travelers relies on the opinion of its expert, Dr. Adam Carinci, who contends that ongoing rhizotomies are "inconsistent with the standard of care" for treating injuries like Mullaney's and a rhizotomy is often a "one and done" procedure.[30]  Travelers also points to the deposition testimony of Mullaney's expert, Dr. Raimundo Leon, who could not name a source in medical literature that supported ongoing rhizotomies for life.[31]  Dr. Leon recommends a lifetime of

---

[26] ECF No. 44 at 19.

[27] *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913 (D. Nev. 2006)).

[28] ECF No. 50 at 234 (cleaned up); ECF No. 44 at 19.

[29] ECF No. 44 at 11, 14, 19.  Travelers' argument on Mullaney's breach-of-contract claim largely focuses on its position that it timely offered to settle and that it didn't delay payment of the claim.  *See id.* at 19.  But the actual focus of Mullaney's breach-of-contract claim is whether rhizotomies are covered procedures that Travelers failed to cover.  *See* ECF No. 1-1.

[30] ECF No. 44 at 14; ECF No. 45 at 5–6.

[31] *Id.* at 13.

annual rhizotomies for Mullaney based instead on "his clinical experience" providing rhizotomies[32] and his opinion that the affected nerves regenerate after several months.[33]

Travelers focuses much on the speculative nature of ongoing rhizotomies and deposition testimony suggesting a lack of medical literature in support of the procedures. I faced a similar issue in *Humes v. Acuity*.[34] In that case, Donald Humes claimed that he suffered ongoing pain from a car accident.[35] He treated the pain with serial rhizotomies and intended to do so for the rest of his life.[36] When his UIM insurer refused to cover the ongoing rhizotomies, he sued for breach of contract.[37] In that case, I allowed Dr. Leon to testify at trial about Humes's ongoing need for pain management and the necessity of lifetime rhizotomies to treat the pain.[38] And after the jury returned a verdict for Humes, I denied the insurer's motion for a new trial because Dr. Leon's testimony about the rhizotomies provided a sufficient basis for the jury's verdict and the damage award.[39]

Given that Mullaney has the same doctor and his opinion mirrors that from *Humes*, I find that there is sufficient evidence on which a jury could rule for Mullaney. So, whether ongoing rhizotomies are a benefit covered by Mullaney's policy remains genuinely disputed. Resolution

---

[32] ECF No. 44-4 at 16 (68:5–15).

[33] ECF No. 54 at 14.

[34] *Humes v. Acuity*, 2022 WL 293324, at *1–2 (D. Nev. Feb. 1, 2022).

[35] *Id.* at 1.

[36] *Id.* at 1–2.

[37] *Id.* at 1.

[38] *Id.*

[39] *Id.* at 2; *see also Berry v. Auto-Owners Ins. Co.*, 634 F. App'x 960, 962–64 (5th Cir. 2015) (unpublished) (upholding jury verdict in favor of car-accident plaintiff whose medical expert testified that he would need a lifetime of rhizotomies because the testimony established that he "would need some form of pain management for the rest of his life" and his medical expert "had personally given patients annual rhizotomies for longer than seven years with good results.").

of that dispute will require weighing the experts' testimony and credibility, which is a job for the jury, not this court.[40] So I deny Travelers' request for summary judgment on Mullaney's breach-of-contract claim.

**C. Questions of fact about the quality of Travelers' medical investigation and communications preclude summary judgment on Mullaney's bad-faith claim.**

Travelers also moves for summary judgment on Mullaney's claim that it investigated and adjusted her claim in bad faith.[41] Mullaney's bad-faith claim rests on two grounds. First, Mullaney challenges the adequacy of Travelers' medical investigation.[42] Second, she alleges that Travelers was intentionally obtuse in communicating how it determined coverage and delayed the claim.[43]

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing."[44] An insurer breaches its duty of good faith and fair dealing and acts in bad faith if it denies benefits due under the policy without any reasonable basis for the denial.[45] But the insurer must have known or recklessly disregarded that it was acting unreasonably.[46]

---

[40] *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1192 (9th Cir. 2000) ("Weighing the credibility of conflicting expert witness testimony is the province of the jury.").

[41] ECF No. 44 at 20.

[42] ECF No. 48 at 17.

[43] *Id.*

[44] *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).

[45] *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy.").

[46] *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996); *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998).

"The key to a bad-faith claim is whether or not the insurer's denial of coverage was reasonable."[47] Some courts have held that a genuine dispute over whether coverage applies bars a bad-faith claim.[48] Thus, under this genuine-dispute doctrine, claims for bad faith should be summarily adjudicated if the defendant demonstrates that there was a genuine dispute as to coverage—such as a factual dispute or a dispute over unsettled areas of insurance law.[49] But the reasonableness of an insurer's conduct should be resolved by a jury when the relevant facts are in dispute or permit differing inferences.[50] So "the genuine-dispute doctrine should be applied on a case-by-case basis."[51]

***1. The genuine-dispute doctrine does not apply because whether Travelers adequately reviewed Mullaney's medical records is subject to multiple interpretations.***

Both parties attempt to analogize or distinguish this case from *Tracey v. American Family Mutual Insurance Co.*, in which another judge in this district interpreted the genuine-dispute doctrine. In *Tracey*, Shane Tracey sued his UIM insurer after it refused to cover his back injury.[52] The insurer maintained that the back injury was unrelated to the accident.[53] The insurer moved for summary judgment asserting that the genuine-dispute doctrine barred any bad-faith claim because the disagreement was a reasonable factual dispute.[54] But the court rejected

---

[47] *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (cleaned up).

[48] *See Olson v. Mid-Century Ins. Co.*, 2025 WL 2554820, at *3 (Nev. Sept. 4, 2025) (unpublished).

[49] *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

[50] *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989).

[51] *Guebara*, 237 F.3d at 994 (cleaned up).

[52] *Tracey v. Am. Fam. Mut. Ins. Co.*, 2010 WL 3613875, at *1 (D. Nev. Sept. 8, 2010).

[53] *Id.*

[54] *Id.* at *1–3.

that argument because it concluded, relying on the California Supreme Court's opinion in *Wilson v. 21st Century Insurance Co.*,[55] that a "genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds."[56] Thus, if the insurer did not reasonably investigate the claim, then the dispute is not genuine.[57] Tracey theorized that the insurer was not properly informed about the investigation for several reasons: the insurer did not request an independent medical examination, it relied on a nurse rather than an expert to evaluate the medical records, and it did not provide all the medical records to the nurse.[58] Given that those material issues could be interpreted differently, the judge found that a jury could have concluded that the insurer was not adequately informed about the claim and thus unreasonable in investigating and denying the claim.[59] So she held that the genuine-dispute doctrine didn't apply and denied summary judgment.[60]

Mullaney likens her case to *Tracey* by pointing out that Travelers did not consult a qualified medical expert or a pain-management specialist. Instead, it relied on the opinion of Nurse Liparulo.[61] Mullaney contends that Liparulo was unqualified to opine on whether ongoing rhizotomies are necessary and was not provided with records showing that the rhizotomies alleviated Mullaney's pain.[62] Mullaney also notes that Travelers did not ask for an independent medical examination (IME) or an examination under oath that Mullaney believes could have

---

[55] *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082 (Cal. 2007).

[56] *Tracey*, 2010 WL 3613875, at *3 (quoting *Wilson*, 171 P.3d 1082).

[57] *Id.* (citing *Wilson*, 171 P.3d 1082).

[58] *Id.*

[59] *Id.*

[60] *Id.* at *3, 8.

[61] ECF No. 46-2 at 10–11.

[62] ECF No. 48 at 22–23.

resolved any concerns over causation.[63] Mullaney bolsters these points with the opinion of her claims-handling expert,[64] along with Liparulo's deposition testimony in which she concedes that she was unqualified to determine whether future rhizotomies are needed.[65] Travelers distinguishes *Tracey* by arguing that Liparulo was not addressing Dr. Leon's opinion but rather consulting medical literature that states that rhizotomies must be provided on a procedure-by-procedure basis and thus Mullaney's need for future rhizotomies cannot be determined.[66] Travelers also argues that an IME or an examination under oath would not have made a difference because whether an additional rhizotomy is needed cannot be known until after the last one.[67]

Although *Tracey* and *Wilson* are not binding, I find their holdings and rationale supported by Nevada law. The Nevada Supreme Court has never stated that an inadequate investigation negates the genuine-dispute doctrine. But that is because, as the Nevada Supreme Court noted in a recent unpublished opinion, it "has never explicitly adopted the genuine-dispute doctrine," even "though federal courts in Nevada have applied it consistently."[68] Rather, in its view, the genuine-dispute doctrine "is not a separate rule of law," but a restatement of the "reasonableness requirements for bad faith" that "a plaintiff must show that the insurer acted unreasonably and knew that it acted unreasonably."[69]

---

[63] *Id.* at 18–19; ECF No. 56 at 218.

[64] *Id.* at 205.

[65] *Id.* at 134 (26:3–9).

[66] ECF No. 44 at 23–24.

[67] ECF No. 58 at 7.

[68] *Olson*, 2025 WL 2554820, at *3 (cleaned up).

[69] *Id.*

The rule in *Wilson* thus aligns with other cases from the Nevada Supreme Court, which have broadly recognized that an insurer can act unreasonably by failing to adequately investigate a claim.[70] For example, in *Powers v. United Services Automobile Ass'n*, a retired Air Force colonel's boat sank in a dramatic fashion in the Gulf of Mexico.[71] When Powers submitted a claim to USAA, it hired an inexperienced salvager and a special investigator who had no experience in marine investigations to look into the boat's sinking.[72] Their conclusions led USAA to believe that Powers had intentionally sunk the boat, eventually leading them to deny the claim and recommend Powers for criminal prosecution—though Powers was later acquitted.[73] Powers brought a bad-faith claim in response.[74] He supported his claim with investigations-management experts who "testified that USAA's investigation was improper, incomplete, [and] poorly done," along with USAA's special investigator's own admission that there were errors in his report.[75] The jury sided with Powers.[76] On appeal, the Nevada Supreme Court affirmed, finding that there was "substantial evidence that had USAA undertaken an objective investigation, USAA would have discovered evidence to show that the claim should have been paid."[77]

---

[70] *See Powers*, 962 P.2d at 604–05; *see also Ainsworth v. Combined Ins. Co. of Am.*, 763 P.2d 673, 675–76 (Nev. 1988).

[71] *Powers*, 962 P.2d at 598.

[72] *Id.* at 598–99.

[73] *Id.* at 598–600.

[74] *Id.* at 600.

[75] *Id.* at 604.

[76] *Id.*

[77] *Id.*

Because the Nevada Supreme Court has recognized that an inadequate investigation and reliance on unqualified experts can constitute bad faith, I find *Tracey's* holding and rationale persuasive. *Tracey* bears a close factual relationship to this case—Mullaney raises questions of fact about whether Liparulo was qualified to review her records, whether the necessary records were provided, and whether there was a need for an independent medical examination or an examination under oath. Mullaney has also provided expert testimony suggesting that the claim's adjustment was unreasonable and pointed to specific aspects of the investigation that could be interpreted as unreasonable. So, like in *Tracey*, questions of fact preclude summary judgment on Mullaney's bad-faith claim as it relates to Travelers' investigation.

### ***2. A jury must decide the reasonableness of Travelers' communications with Mullaney and adjustment of her claim.***

Travelers also seeks summary judgment on Mullaney's secondary theory that the insurer's deficient communication on the claim also constitutes bad faith. Mullaney alleges that it took twelve requests and a year and a half after the first request to get an adequate response to her questions about how Travelers decided coverage.[78] She alleges that some decisions remain unexplained (like Travelers' decision to apply California billing guidelines) and that she had to litigate to learn who reviewed her medical records.[79] Travelers insists that it promptly communicated with Mullaney, it did not need to respond to her counsel's "multiple and repetitive letters in the manner he dictated," Mullaney's own claim-handling expert seemed

---

[78] ECF No. 48 at 16–18.

[79] *Id.*

doubtful about whether Travelers needed to respond, and Travelers was willing to settle until Mullaney filed suit.[80]

Neither party cites authorities in support of its position on this issue, but the Nevada Supreme Court has recognized that conduct that delays the payment of benefits may constitute bad faith.[81] In *Guaranty National Insurance Co. v. Potter*, Gerald and Valerie Potter were injured in a car accident and sought coverage from their UIM insurer, Guaranty.[82] As part of its investigation, Guaranty required that the Potters undergo independent medical examinations (IMEs).[83] Guaranty was obligated to pay for the IMEs but did not.[84] When the Potters started receiving bills and demand letters from collection agencies, Guaranty assured the Potters in July that it was actively negotiating with the collection agencies for payment—despite not contacting them until October.[85] After Guarantee attempted to low-ball the collection agencies, the collection agencies sued the Potters.[86] Only at trial did Guaranty finally reach an agreement to pay for the IMEs.[87] The Potters successfully sued Guaranty for bad faith, alleging that the insurer unnecessarily delayed payment.[88] The Nevada Supreme Court upheld the jury's award because Guaranty's failure to pay and confusing communication delayed distribution of the

---

[80] ECF No. 58 at 2–6.

[81] *Potter*, 912 P.2d at 269.

[82] *Id.*

[83] *Id.* at 269–70.

[84] *Id.*

[85] *Id.* at 270–71.

[86] *Id.* at 271.

[87] *Id.*

[88] *Id.* at 271–72.

benefit.[89] It thus breached its "obligation to deal fairly with the Potters in paying for [the] IMEs," and "its delay in paying for the exams constituted an act of bad faith."[90]

Viewing Travelers and Mullaney's exchange in the light most favorable to her could support her theory that Travelers failed to inform Mullaney about the identity of the nurse and failed to explain how it decided coverage. And drawing all reasonable inferences in Mullaney's favor, not having that information may have materially worsened her position—by preventing resolution of the claim, delaying payment of the claim, and forcing Mullaney to litigate to learn the basis of her rhizotomies denial. Because a bad-faith claim may be based on an insurer's conduct that delays payment of a benefit under *Guaranty*, that potential interpretation of their exchange creates a question of fact that precludes summary judgment on this portion of Mullaney's bad-faith claim.

**D. The same questions of fact prevent summary judgment on Mullaney's unfair-claims-practices and declaratory-relief claims.**

Travelers also moves for summary judgment on Mullaney's unfair-claims-practices claim under Nevada Revised Statutes (NRS) 686A.310 and Mullaney's declaratory-relief claim alleging violations of the same statute.[91] An unfair-claims-practices claim alleges that an

---

[89] *See id.* at 272.

[90] *Id.* at 269, 272. Based on similar reasoning, several district courts have found that inconsistent communication can delay a claim's payment and constitute bad faith. *See, e.g.*, *Zavala v. Geico Cas. Co.*, 2023 WL 2268143, at *1–4 (D. Nev. Feb. 27, 2023) (finding that a complaint stated a bad-faith claim and an unfair-claims-practices claim when the plaintiff alleged it took a year and a half for the insurer to decide coverage, the insurer only sent its first update letter—after several months—when it learned of the plaintiff's intention to file a UIM claim, and the plaintiff received multiple inconsistent explanations from her insurer about its decision); *see also Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1256–57 (D. Nev. 2016); *Lubritz v. AIG Claims, Inc.*, 2018 WL 7360623, at *5 (D. Nev. Dec. 18, 2018); *Williams v. Travelers Home & Marine Ins. Co.*, 2023 WL 2430144, at *4 (D. Nev. Jan. 24, 2023).

[91] ECF No. 44 at 15, 24.

insurer's conduct fell below several enumerated standards.[92] Mullaney contends that discovery shows that Travelers violated NRS 686A.310[93] by failing to promptly explain coverage,[94] failing to promptly settle the claim,[95] using unreasonable standards for the investigation,[96] attempting to settle for unreasonable amounts,[97] and forcing litigation.[98] An unfair-claims-practices claim and a bad-faith claim are distinct but closely related causes of action.[99] Although the legal claim is different, the parties rehash the same points they made regarding Mullaney's bad-faith claim. And the same questions of material fact that preclude summary judgment on the bad-faith claim bar summary judgment on Mullaney's unfair-claims-practices claim as to these subsections.

Mullaney, however, does not contest Travelers' request for summary judgment on the remaining subsections of NRS 686A.310(1) that she alleged in her complaint. I thus grant summary judgment on the declaratory-relief claim and the unfair-claims-practices claim to the extent they allege violations of any subsections of NRS 686A.310(1) other than (n), (e), (c), (f), and (g).

**E. The record does not support Mullaney's prayer for punitive damages.**

Finally, Travelers moves for summary judgment on Mullaney's request for punitive damages. "Punitive damages provide a means by which the community . . . can express

---

[92] *See generally* Nev. Rev. Stat. § 686A.310.

[93] ECF No. 48 at 26–28 ("Some provisions, however, are no longer applicable. Thus, [Mullaney] only discusses the provisions that apply here.").

[94] Nev. Rev. Stat. § 686A.310(1)(n).

[95] Nev. Rev. Stat. § 686A.310(1)(e).

[96] Nev. Rev. Stat. § 686A.310(1)(c).

[97] Nev. Rev. Stat. § 686A.310(1)(g).

[98] Nev. Rev. Stat. § 686A.310(1)(f).

[99] *See Tracey*, 2010 WL 3613875, at *2.

community outrage or distaste for the misconduct of an oppressive, fraudulent[,] or malicious

defendant and by which others may be deterred and warned that such conduct will not be

tolerated."[100]  To recover them, a plaintiff must prove "by clear and convincing evidence that the

defendant is 'guilty of oppression, fraud[,] or malice, express or implied.'"[101]  "Oppression

means despicable conduct that subjects a person to cruel and unjust hardship with conscious

disregard of the rights of the person."[102]  "Fraud means an intentional misrepresentation,

deception[,] or concealment of a material fact known to the person with the intent to deprive

another person of his rights or property or to otherwise injure another person."[103]  "[E]xpress

malice is conduct [that] is intended to injure a person; implied malice is despicable conduct

which is engaged in with a conscious disregard of the rights . . . of others."[104]

Travelers contends that Mullaney cannot show by clear and convincing evidence that it

was oppressive, fraudulent, or malicious in denying her UIM claim as to the rhizotomies.[105]

Mullaney responds with many of the same arguments that support her bad-faith claim: Travelers

didn't adequately respond to her questions, forced her to litigate, and conducted an inadequate

medical investigation.[106]  She also alleges that denying coverage for pain-management treatment

oppressed her.[107]  But "Nevada follows the rule that proof of bad faith, by itself, does not

---

[100] *Bongiovi v. Sullivan*, 138 P.3d 433, 450 (Nev. 2006) (cleaned up).

[101] *Id.* at 450–51 (quoting Nev. Rev. Stat. § 42.005(1)) (cleaned up).

[102] Nev. Rev. Stat. § 42.001(4) cleaned up).

[103] Nev. Rev. Stat. § 42.001(2) (cleaned up).

[104] *Clark v. Lubritz*, 944 P.2d 861, 867 (Nev. 1997) (quoting Nev. Rev. Stat. § 42.001(3)) (cleaned up).

[105] ECF No. 44 at 27–30.

[106] ECF No. 48 at 28–30.

[107] *Id.*

establish liability for punitive damages."[108] And while such conduct, when viewed in the light most favorable to the plaintiff, could rise above a genuine valuation dispute, it falls short of meeting the high threshold needed for oppression, fraud, or malice. So, I grant summary judgment for Travelers on Mullaney's request for punitive damages and strike that prayer.

**Conclusion**

IT IS THEREFORE ORDERED that Travelers' motion for summary judgment **[ECF No. 44]** is **GRANTED** in part and **DENIED** in part. Travelers is entitled to summary judgment on Mullaney's declaratory-relief claim and the unfair-claims-practices claim to the extent they allege violations of any subsections of NRS 686A.310(1) other than (n), (e), (c), (f), and (g), and her prayer for punitive damages is struck. But the motion is denied in all other respects.

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for a mandatory settlement conference**. **The parties' obligation to file a joint pretrial order is STAYED** until 10 days after that settlement conference.

U.S. District Judge Jennifer A. Dorsey
September 11, 2025

[108] *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989).